UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

GENINE M.,

           Plaintiff,

      v.                                                                                                   **DECISION AND ORDER**
                                                                                                                  21-CV-293S
COMMISSIONER OF SOCIAL SECURITY,

           Defendant.
_____

      1.      Plaintiff Genine M.[1] challenges the determination of an Administrative Law Judge ("ALJ") that she is not disabled within the meaning of the Social Security Act ("the Act"). Plaintiff alleges that she has been disabled since February 1, 2012, due to physical and mental limitations. Plaintiff maintains that she is entitled to benefits because her impairments render her unable to work.

      2.      This is the second time that Plaintiff's case is in federal court. Plaintiff initially applied for disability benefits and supplemental security income on June 9, 2014. After denial at the agency level, Plaintiff proceeded to a hearing before ALJ William Weir on November 21, 2016. The ALJ considered the case *de novo* and, on April 5, 2017, issued a written decision denying Plaintiff's applications for benefits. After the Appeals Council denied Plaintiff's request for review, she appealed to federal court, where, on September 10, 2019, the Honorable Marian W. Payson, United States Magistrate Judge, remanded the case for further development of the record to include medical opinion

---

[1] In accordance with this district's Standing Order of November 18, 2020, and consistent with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, this Decision and Order identifies the plaintiff by first name and last initial only.

evidence. See Murray v. Comm'r of Soc. Sec., 18-CV-326P, 2019 WL 4263336 (W.D.N.Y. Sept. 10, 2019).

3. On remand, ALJ Weir held another hearing on November 2, 2020. At the time of the hearing, Plaintiff was 40 years old with at least a high school education and past relevant work as a receptionist and data-collection worker. The ALJ considered the case *de novo* and, on January 20, 2021, issued a written decision denying Plaintiff's applications for benefits.

4. Plaintiff filed the current action on February 24, 2021, challenging the Commissioner's final decision. After filing of the administrative record, the parties cross-moved for judgment on the pleadings under Rule 12 (c) of the Federal Rules of Civil Procedure, with briefing concluded on April 14, 2022. (Docket Nos. 6-10.) The Clerk of Court thereafter assigned the case here on October 3, 2022, at which time this Court took the motions under advisement without oral argument. (Docket No. 11.) For the following reasons, Plaintiff's motion will be denied, and Defendant's motion will be granted.

5. A party is entitled to judgment on the pleadings under Rule 12 (c) "only if it has established that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." Juster Assocs. v. City of Rutland, 901 F.2d 266, 269 (2d Cir. 1990) (internal quotation marks omitted). In social security appeals, the district court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing a decision of the Commissioner of Social Security, with or without remanding the case for a rehearing." 42 U.S.C. §§ 405 (g), 1383 (c)(3).

6. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405 (g), 1383 (c)(3); Wagner v. Sec'y

of Health & Hum. Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Instead, the court's inquiry is limited to two issues: (1) whether the Commissioner applied the correct legal standards, and (2) whether the Commissioner's factual findings are supported by substantial evidence.  See Greek v. Colvin, 802 F.3d 370, 374-75 (2d Cir. 2015) (per curiam); see also Norman v. Astrue, 912 F. Supp. 2d 33, 70 (S.D.N.Y. 2012) ("The Court first reviews the Commissioner's decision for compliance with the correct legal standards; only then does it determine whether the Commissioner's conclusions were supported by substantial evidence.").  In conducting this inquiry, the court cannot substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review."  Valente v. Sec'y of Health & Hum. Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).  Consequently, if the Commissioner's determination is free from legal error and supported by substantial evidence, the court must affirm.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).

    7.  As it relates to the legal-error inquiry, the court must determine whether "the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the [Social Security] Act."  Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009) (internal quotations and citations omitted).  "Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations."  Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008) (citation omitted).  This inquiry is completed first because "[w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made

3

according to the correct legal principles." Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).

8. As it relates to the substantial-evidence inquiry, the standard is not high. See Biestek v. Berryhill, __ U.S. __, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019). The United States Supreme Court defines substantial evidence as only "more than a mere scintilla," Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971), and has clarified that "[i]t means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" Biestek, 139 S. Ct. at 1154 (quoting Consol. Edison Co. v. NLRB, 305 U.S 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)). Because the Commissioner's factual findings are conclusive if supported by substantial evidence, see 42 U.S.C. §§ 405 (g), 1383 (c)(3), review is properly focused on whether substantial evidence supports the Commissioner's determination, not whether substantial evidence might also support the plaintiff's position. See Zacharopoulos v. Saul, 516 F. Supp. 3d 211, 220 (E.D.N.Y. 2021) (noting that "the relevant question is not whether substantial evidence supports plaintiff's position, but whether 'substantial evidence supports *the ALJ's decision*'") (quoting Bonet ex rel. T.B. v. Colvin, 523 F. App'x 58, 59 (2d Cir. 2013) (emphasis in original)). This is "a very deferential standard of review—even more so than the 'clearly erroneous' standard." Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (citing Dickinson v. Zurko, 527 U.S. 150, 153, 119 S. Ct. 1816, 144 L. Ed. 2d 143 (1999)).

9. "To determine on appeal whether [the Commissioner's] findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the

4

evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's factual findings must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). Similarly, where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982). In short, the substantial-evidence standard requires that once an ALJ finds facts, those facts can be rejected "'only if a reasonable factfinder would *have to conclude otherwise*.'" Brault, 683 F.3d at 448 (quoting Warren v. Shalala, 29 F.3d 1287, 1290 (8th Cir. 1994) (emphasis in original)).

10. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled. 482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987).

11. The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits her physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider her disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed"

>impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, she has the residual functional capacity to perform her past work.  Finally, if the claimant is unable to perform her past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. §§ 404.1520, 416.920; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

12. The claimant has the burden of proof on the first four steps; the Commissioner has the burden of proof on the fifth step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).  The fifth step is divided into two parts.  First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience.  Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. §§ 423 (d)(2)(A), 1383 (c)(1)(A); 20 C.F.R. §§ 404.1520 (f), 416.920 (a)(4); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

13. In this case, the ALJ found the following with regard to the five-step process set forth above: (1) Plaintiff had not engaged in substantial gainful activity since February 1, 2012, the alleged onset date (R. at 618); (2) Plaintiff's lumbago, headaches, and bipolar disorder were severe impairments within the meaning of the Act (R. at 618-19); (3) Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (R. at 619-21); (4) Plaintiff retained the residual functional capacity ("RFC") to perform sedentary

work as defined in 20 C.F.R. §§ 404.1567 (a) and 416.967 (a), except she should have no more than occasional contact with supervisors, co-workers, and the public, and she should not work in environments with noise levels above 70 decibels (average office noises) (R. at 621-626); (5) Plaintiff was unable to perform any past relevant work; and (6) Plaintiff could perform jobs that exist in significant numbers in the national economy given her age, education, work experience, and RFC (R. at 627). Accordingly, the ALJ determined that Plaintiff was not under a disability as defined by the Act from February 1, 2012, through January 20, 2021. (R. at 617, 628.)

14. Plaintiff lodges a single challenge to the ALJ's decision: she argues that the ALJ failed to properly consider the opinion of her treating nurse practitioner, Michael Ostolski, affording it only limited weight. In response, the Commissioner argues that the ALJ's decision is supported by substantial evidence and free from legal error and should therefore be affirmed. This Court agrees with the Commissioner.

15. NP Ostolski's opinions are set forth in a series of employability assessments completed between 2013 and 2019. (R. at 1585-1605.) On May 6, 2013, NP Ostolski opined in check-mark boxes that Plaintiff had moderate limitations in standing, sitting lifting, carrying, pushing, pulling, bending, and climbing. (R. at 1588.) He also wrote narratively that Plaintiff was unable to sit or stand for unspecified "extended periods of time" due to back pain and a history of fibromyalgia, which Plaintiff reported was continuing to worsen. (R. at 1588.) He repeated essentially these same opinions with little or no variation on employability forms dated November 10, 2013 (R. at 1590); May 7, 2014 (R. at 1592); November 22, 2014 (R. at 1594); November 5, 2015 (R. at 1596);

7

November 8, 2016 (R. at 1598); November 17, 2017 (R. at 1600); November 29, 2018 (R. at 1602); and November 19, 2019 (R. at 1604).

16. The ALJ considered NP Ostolski's opinions and afforded them "limited weight," explaining (1) that NP Ostolski initially found very few and only mild limitations yet only one month later found that Plaintiff had significant limitations and could not work, (2) that NP Ostolski's opinions and reports seemed to be based on Plaintiff's self-reported limitations, and (3) that NP Ostolski did not provide any supporting evidence for his opinions. (R. at 622, 626.)

17. Plaintiff maintains that the ALJ's reasons for discounting NP Ostolski's opinions are not supported by substantial evidence in the record. She argues that the ALJ failed to properly consider the regulatory factors applicable to "other source" opinions and failed to adequately summarize, discuss, and explain his treatment of NP Ostolski's opinions. Because Plaintiff filed her applications before March 27, 2017, the prior regulations governing the evaluation of medical evidence found in 20 C.F.R. § 416.927 apply, as do the prior Social Security Rulings ("SSR").

18. SSR 06-03p provides that, as a nurse practitioner, NP Ostolski is an "other source."[2] 2006 WL 2329939, at *2 (S.S.A. Aug. 9, 2006). In evaluating the opinions of "other sources," SSR 06-03p directs ALJs to consider the same factors used to evaluate the opinions of "acceptable medical sources," including treating physicians. 2006 WL 2329939, at *4; see also 20 C.F.R. § 416.927 (f). These factors include but are not limited to "the length of the treatment relationship, the frequency of evaluation, and the degree to which the opinion is supported and consistent with the record." 2006 WL 2329939, at

---

[2] SSR 06-03p is now rescinded.

8

*4; see also 20 C.F.R. § 416.927 (c)(1)-(6).  ALJs must further explain what weight, if any, they afford such opinions.  See Sears v. Astrue, No. 2:11–CV–138, 2012 WL 1758843, at *3 (D. Vt. May 15, 2012).

19.     Here, Plaintiff complains that the ALJ failed to properly assess NP Ostolski's opinions and did not adequately explain his consideration of them in sufficient detail.  This Court concludes otherwise.  The ALJ discounted NP Ostolski's opinions because they changed drastically without explanation over the course of one month and appeared to be based on Plaintiff's subjective complaints.  (R. at 622, 626.)  Indeed, the record reflects that NP Ostolski appears to have adopted Plaintiff's subjective complaints—or the conclusions of other providers—rather than reach his own opinions.

20.     After conducting an examination on April 3, 2013, NP Ostolski noted that Plaintiff's physical and mental diagnoses were being treated "out of office by specialists," and he was therefore "unable to verify current limitations."  (R. at 1586.)  He also found no evidence of any physical limitations at that time, while simultaneously indicating that Plaintiff was being "treated by [a] back specialist" and her functional imitations were "unable to [be] determined."  (R. at 1586.)  But just one month later, after an exam on May 2, 2013, NP Ostolski indicated moderate limitations in several areas of physical functioning, without any direct explanation, and wrote that Plaintiff's symptoms continued to worsen "on review with patient," which indicates self-reporting (R. at 1588.)  NP Ostolski then repeats these same findings in subsequent years with no changes or further explanation, which given the genesis of the opinions, does not support crediting consistency.  Moreover, NP Ostolski's treatment notes support the ALJ's finding that his opinions may have been initially formed from Plaintiff's self-reports rather than objective medical testing.  (R. at 378, 380, 384.)  This Court therefore finds no reversible error in

the ALJ's decision to afford NP Ostolski's opinions limited weight, which is sufficiently explained in his decision.

21.     Finally, this Court finds that the ALJ complied with Judge Payson's remand instructions.  Consultative examiners Nikita Dave, M.D., and Gregory Fabiano, Ph.D., conducted physical and mental health examinations of Plaintiff in December 2019. (R. at 623, 625.)  The ALJ considered the medical and opinion evidence from those sources as directed in formulating Plaintiff's RFC, and the ALJ's conclusions in that regard are not challenged herein.  Accordingly, this Court finds that Judge Payson's remand instructions were complied with, and that Plaintiff's RFC is sufficiently supported by substantial evidence in the record.

22.     Accordingly, having reviewed the ALJ's decision in light of Plaintiff's arguments, this Court finds that it is free from legal error and supported by substantial evidence.  It is therefore affirmed.  See Grey, 721 F.2d at 46; Marcus, 615 F.2d at 27.  Plaintiff's motion is denied, and Defendant's motion is granted.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 8) is DENIED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 9) is GRANTED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.

Dated:     January 23, 2023
           Buffalo, New York

                                           s/William M. Skretny
                                           WILLIAM M. SKRETNY
                                           United States District Judge